Trustees of Chester Church *vs.* Blount, executor.

---

TRUSTEES OF CHESTER CHURCH *vs.* BLOUNT, executor.

1. Ejectment was brought by certain persons as trustees of a church; the defendant died; when the case was called, his executor, though a year had not elapsed, was voluntarily made a party; during the trial, counsel for plaintiffs stated that a deed made to the church, or former trustees thereof, had been supposed to be lost, but had been found by the deceased defendant, and was in possession of

Trustees of Chester Church *vs.* Blount, executor.

counsel for defendant; he introduced a witness who swore that the deceased defendant had told him about a year previously of the finding of the deed, and charged him to keep it secret, which he had done until since the trial began; counsel for plaintiffs moved to require counsel for defendant to deliver the deed; the court refused to do so, or to require counsel for defendant to answer questions as to his possession; plaintiffs then moved for a continuance to give time for a notice to produce; it was refused:

*Held*, that this was error. Wherever a paper is in court belonging to one party and surreptitiously secured and secreted by the other, and handed to counsel, not to prepare a legitimate defence by the use of a link in the title, but to keep under cover of privilege and confidence, *semble* that its instant delivery to the party to which it belonged should be ordered.

2. If notice to produce was necessary, a continuance should have been allowed to give time for that purpose. Under the facts, the plaintiffs were not in *laches*. The defendant had died; his executor had just been made a party; counsel had just learned of the possession of the deed.

*a.*) The deed desired was good as color of title to support prescription, whether made to trustees or the *cestui que trust*.

September 18, 1883.

Practice in Superior Court. Attorney and Client. Continuance. Before Judge Bower. Decatur Superior Court. May Term, 1883.

Reported in the decision.

D. A. Russell, by J. H. Lumpkin, for plaintiffs in error.

O. G. Gurley; J. E. Donaldson, for defendant.

Jackson, Chief Justice.

In the view we entertain of the law, it is unnecessary to consider but one of the exceptions to the rulings of the court, and that is based on the refusal of the court to continue so as to enable the plaintiffs to give notice to defendant and his counsel to produce the deed.

The facts on the point are, that the deed had been lost, was over thirty years old, and had been found by defend-

Trustees of Chester Church vs. Blount, executor.

ant, and was then in possession of his attorney, Mr. Gurley, and plaintiffs had just received information of the fact of its being found and in possession of the other side.

Plaintiffs moved that the paper be surrendered by the said counsel, and proposed to ask him whether he had it. James English was introduced as a witness on this motion, and testified "that about a year ago Jacob Blount (who had been the defendant) told him he found the Chester church deed among the old papers of Jesse L. Collins, now deceased, and told witness to say nothing about it, but keep it a secret. Witness never told any one about it until since the beginning of this trial. Mr. Blount said it was an old deed from Stephen Swain to the Chester Church." The court denied the motion to produce the deed or interrogate the counsel as to his possession of it. Thereupon plaintiffs made a motion to continue in order to serve notice on defendant and his counsel to produce the paper. The executor of Blount, who had died since the last term, was made a party by consent that day on the call of the case.

1. We hardly think that the facts in the case at bar come up to the ruling of this court in *Dover vs. Harrell*, 58 *Ga.*, 572, and therefore, are inclined to the opinion that counsel should have replied to the question as to his possession of the deed, and if he had it, should have been directed to produce it. In *Dover vs. Harrell*, the grant which the counsel was forced to produce was a title paper of the client which had been entrusted to the counsel "to prepare his defence." In the case at bar the deed was a deed to the plaintiffs, belonging to the church, and which the defendant had got from the effects of a dead man, doubtless a trustee or officer of the church, which the defendant had secreted with the fraudulent intent not to divulge that it had been found, which was no muniment of title to him, nor confided to his counsel to prepare his defence. It was a naked effort to deprive his adversary of a paper which belonged to it, and to which it had.

the exclusive title. It was a fraud to secrete it, and no less a fraud to withhold it.

Wherever a paper is in court belonging to one party and thus surreptitiously secured and secreted by the other and handed to counsel, not to prepare a legitimate defence by the use of a link in the title of the party, but to keep under color of privilege and confidence, we rather think good law, as certainly good morals, would demand its instant delivery to the party to which it belonged.

2. But let that pass. It is quite clear that the plaintiffs were in no *laches* in respect to notice to produce the deed. They had no reason to believe or suspect that their adversary had it hid. They were informed of it on the trial. They proved it by a witness. If in court, in the pocket of party or counsel, it should have been disgorged, as intimated above; if not, or if notice to produce it were necessary because of extreme regard to the privilege of counsel and the confidence of his client in him, then the case should have been continued, so as to serve the executor of the man who secreted the paper or his counsel, or both, with notice to produce it.

The executor was just made a party, and could not have been served with notice before, even if the fact had been known; but the information was just received, and too late to give the notice in the time required by law. It is too plain for further discussion that the continuance ought to have been granted. The deed was all important. It was good color to support prescription, whether to trustees to *cestui que trust*, to former or present trustees, their successors, or to the Chester Church.

It is bad enough for a man to lose rights by such conduct; it is worse, infinitely worse, for a church, a society for the worship of God according to conscience, to lose its place of worship thereby.

Judgment reversed.