27133. POWELL *et al.,* receivers, *v.* FIRST NATIONAL BANK AND TRUST COMPANY.

DECIDED NOVEMBER 7, 1938.

*McDonald & McDonald, Whipple & Williams,* for plaintiffs in error. *D. G. Meeks,* contra.

SUTTON, J. The First National Bank and Trust Company of Macon, Georgia, brought suit in the superior court of Ben Hill County against L. R. Powell Jr. and Henry W. Anderson as receivers of Seaboard Air-Line Railway, the petition as amended alleging (par. 3) that on April 24, 1937, the Fitzgerald Peanut Company delivered to said railway one car-load of number 1 shelled runner peanuts which were loaded in a car designated as A. T. & S. F. 117451; (par. 4) that on said day a bill of lading was issued for said car and its contents to the Fitzgerald Peanut Company as the shipper, the car-load being consigned to Fitzgerald Peanut Company, Sioux City, Iowa, notify Robb-Ross Company; (par. 5) that the bill of lading was issued by W. B. Moody, agent for the receivers in said county; (par. 6) that the defendants are in possession of a copy of said bill of lading, and a copy thereof is attached to and made a part of the petition as exhibit B; (par. 7) that the car contained 40,000 pounds of number 1 shelled runner peanuts of the value of $2800; (par. 8) that on the morning of April 25, 1937, while the car and its contents were in the possession of the defendants, they were destroyed by fire, the defendants being in the possession and control of the car under and by virtue of having issued the bill of lading; (par. 9) that claim had been filed by Fitzgerald Peanut Company with the defendants for said loss, but the claim was disallowed; (par. 10) that on May 17, 1937, the Fitzgerald Peanut Company transferred, sold, and assigned all of its right, title, interest, and claim in the bill of lading, a copy of said assignment being attached to the petition as exhibit A; (par. 11) that the defendants became responsible for the said property immediately upon delivery of the bill of lading; (par. 12) that by reason of the loss by fire and the damage to said peanuts the defendants are indebted to plaintiff $2800 with interest from April 25, 1937; (par. 13) that after the loss by fire occurred to the peanuts as described in the petition, and on a date known to the defendants, they, through their agents and employees, moved said car from the location where it was destroyed by fire by connecting the same to their main line, and later, which date and time are known to the defendants, replaced said car back at about its original position and have let the same remain there since that time. The copy of the document attached as exhibit A shows that under date of May 17, 1937, an assignment of its right, title, and interest in and to the bill of

lading described in the petition was made by Fitzgerald Peanut Company to the plaintiff. The copy of the bill of lading attached to the petition as exhibit B shows that the receivers of the Seaboard Air-Line Railway received, on April 24, 1937, from Fitzgerald Peanut Company at Fitzgerald, Georgia, car A. T. & S. F. 117451, containing 348 bags of number 1 shelled runner peanuts, consigned to order of Fitzgerald Peanut Company at Sioux City, Iowa, notify Robb-Ross Company. The bill of lading bears a notation, "36-foot car ordered." Among other provisions, section 4(f) provides: "property destined to or taken from a station, wharf, or landing at which there is no regularly appointed freight agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and, except in case of carrier's negligence, when received from or delivered to such stations, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from locomotive or train or until loaded into and after unloaded from vessels."

The defendants filed general and special demurrers to the original petition, after which the paragraphs at which the special demurrers were aimed were amended. The amendment (par. 13) containing allegations as to the defendants causing the car to be moved after its contents were destroyed by fire was objected to by a motion to strike and by special demurrer, the defendants also specially demurring to paragraph 3 (as to alleged delivery) on the ground that it was defective and failed to allege in what manner or by what means the said car was delivered to the defendants, and specially demurring to paragraph 8 (as to the contents of the car being destroyed by fire while in the possession of the defendants) on the ground that it amounted to a conclusion of the pleader without sufficient facts being shown in support thereof. The defendants also specially demurred to paragraphs 3, 4, 5, 6, and 8 as originally drawn and as amended (relating to delivery, issuance of bill of lading, and destruction of contents of car by fire while in the possession of the defendant), on the grounds that none of the paragraphs contain any allegation or statement with reference to the related subject-matter set out in section 4(f) of the bill of lading as to the limitation of liability of the carrier under certain conditions, that it is necessary to show under said contract delivery by plaintiff's assignor to the defendants or legal possession of the

goods involved, and the paragraphs wholly fail to set forth any allegations as to what point the said car was delivered at, and whether or not it was delivered to the defendants on their main line or any of their side-tracks at a station, wharf, or landing at which there was a regularly appointed freight agent, or at any other point on defendants' line, or to what persons, agents, or employees the said car was delivered and the attending circumstances necessary to show delivery, and that by reason thereof the alleged delivery is not stated with the requisite definiteness, certainty, sufficiency, and fulness as to enable the defendants to make their defense, and that the paragraphs are evasive and vague respecting this subject-matter; that under section 4(f) the bare obtaining of a bill of lading, even though signed by the carrier's authorized agent, would not constitute delivery to or possession of the carrier, and the allegations do not show facts constituting delivery to the defendants; that none of the paragraphs and no part of the petition contains any allegations that would definitely allege delivery to the defendants as contemplated by section 4(f), and the paragraphs demurred to, each and all, are defective and ineffective in law so far as constituting allegations of delivery or legal possession under section 4(f); that none of the sections contains any allegation in connection with the bill of lading, the basis of plaintiff's right, that in law constitutes an allegation of delivery of the goods involved in the litigation; that the allegations of paragraph 13 (as to the handling of the car after its contents were destroyed by fire) are irrelevant, incompetent, and immaterial to the cause of action, throwing no light whatever on the question whether there was any legal delivery of the goods. The general and special demurrers were interposed at different stages of the pleadings; and after the amendments were allowed by the court the defendants renewed their demurrers to the petition as amended. All of the demurrers were overruled, and error is assigned on all the rulings of the court on grounds preserved by exceptions pendente lite.

It is contended by the plaintiff in error, as to the general demurrer, that the petition does not show the proper venue to be in Ben Hill County, or the jurisdiction to be in the superior court of that county; and that no delivery, as contemplated by section 4(f) of the bill of lading, was shown. That section provided, in effect, that for delivery to come within its terms it must be shown that

the car-load of peanuts was delivered to the defendants at a place where there was a regularly appointed agent, or, where delivery was not made to a regularly appointed agent, it must be shown that the car containing the peanuts was attached to the engine or train of the defendants. A suit of this nature must be brought in the county in which the cause of action arises. Code, § 94-1101. Assuming, but not deciding, that the general demurrer, which does not allege that the petition shows on its face that the venue was not Ben Hill County or that the jurisdiction was not in the superior court of that county, but was based merely on the ground that no cause of action was set forth, would reach the questions of venue and jurisdiction, we think that venue and jurisdiction were properly shown. The petition as amended alleges that a car-load of peanuts was delivered to the carrier, and that a bill of lading was issued therefor by W. B. Moody, agent for the receivers in Ben Hill County. A copy of such bill of lading was attached to the petition and made a part thereof. The copy shows that the car-load was received at Fitzgerald, Georgia, on April 24, 1937, and was receipted for by W. B. Moody, agent. While it is not distinctly alleged that Fitzgerald is in Ben Hill County, it is provided by the act of 1906 (Ga. L. 1906, p. 28), creating Ben Hill County, that Fitzgerald shall be the county-site thereof. The trial court, like all the courts of this State, takes judicial cognizance of the statutes of the State, and accordingly, in passing on the petition and demurrer, would take judicial cognizance of the fact that Fitzgerald is the county-site of Ben Hill County. The fact of Fitzgerald being in Ben Hill County would not have to be proved on the trial of the case, and therefore it would be unnecessary to allege it in the petition. It follows that the venue was properly shown.

We do not think that section 4(f) of the bill of lading, fairly and reasonably construed, means that, where delivery is not shown by the fact that the carrier attaches the shipment to its engine or train, it is necessary to show delivery to a regularly appointed agent who is present at the place of loading in a town or city, for example, at a siding or spur-track which runs to a private enterprise, but only that there must be a regularly appointed agent at the station where the shipment originates and who is authorized to issue a bill of lading. The obvious purpose of providing for the presence of such an agent is to insure proper supervision and care of

goods pending actual physical connection with the carrier's engine or train. A shipment at a remote place where there is no agent, as at a siding between stations, would be exposed to possible damage or destruction, and a railroad might naturally wish to define delivery by providing, either in a bill of lading issued in advance of actually attaching a car-load shipment to its engine or train, or by contract entered into before the goods are even offered for transportation, that delivery shall not be considered to have been made until the car-load is actually attached to its engine or train. Where, as in the present case, the petition alleges that delivery was made, names the car in which the goods were loaded, and a copy of the bill of lading is attached to the petition and made a part thereof, and this copy shows that the car-load of peanuts was received at a station, Fitzgerald, Georgia, being receipted for by an agent of the carrier, we think that a prima facie case of delivery is set out. The bill of lading, however, being only prima facie evidence of delivery, the way is open on the trial of the case for the defendants to show that there was no actual receipt of the goods before their destruction by fire. *Central of Georgia Railway Co.* v. *Cook,* 4 *Ga. App.* 698, 701 (62 S. E. 464) ; *Atlantic Coast-Line R. Co.* v. *Hill,* 12 *Ga. App.* 392 (5), 397 (77 S. E. 316) ; *W. & A. Railroad Co.* v. *Legg,* 32 *Ga. App.* 368 (123 S. E. 31). But as to setting out delivery prima facie, the petition in the present case is sufficient.

Counsel for the plaintiff in error argue that the notation in the bill of lading, "36-foot car ordered," negatives any idea that at the time of the issuance of the bill of lading the goods had been actually loaded and delivered to the carrier; and that, construing the petition most strongly against the pleader, it must be held that no delivery was shown. The bill of lading shows, however, that the goods were contained in a definite car, A. T. & S. F. 117451, which was receipted for on the day before the destruction of the goods by fire; and the quoted language must be regarded merely as a memorandum or surplusage. Nothing indicates that a 36-foot car was not in fact loaded, and in so far as delivery is concerned it would make no difference if a 36-foot car had been ordered and a car of a different length placed, loaded, and receipted for. "Common carriers as such are bound to use extraordinary diligence, and in cases of loss the presumption of law is against them, and no excuse

654

avails them unless the loss was occasioned by the act of God or the public enemies of the State." Code, § 18-102. Where delivery has been made to a carrier and thereafter the goods are destroyed by fire while in the possession of the carrier, it is liable for the full value of the goods consumed, unless the fire was caused by the act of God or the public enemy. *Central of Georgia Railway Co.* v. *Bird,* 10 *Ga. App.* 423 (73 S. E. 599). "The responsibility of the carrier shall commence with the delivery of the goods, either to himself or his agent, or at the place where he is accustomed or agrees to receive them, and shall cease with their delivery at destination according to the direction of the person sending or according to the custom of the trade." Code, § 18-306; *Bainbridge Grocery Co.* v. *Atlantic Coast-Line R. Co.,* 8 *Ga. App.* 677 (70 S. E. 154). The assignee of the bill of lading has the same right of action against the defendants as the Fitzgerald Peanut Company would have had; and consequently the plaintiff, as assignee, is entitled to maintain the present suit. *Canby* v. *Merchants & Miners Transportation Co.,* 16 *Ga. App.* 362 (3) (85 S. E. 361). The petition set forth a cause of action, and the court properly overruled the general demurrer.

The special demurrers, except that which attacked paragraph 13 of the petition, were aimed at the allegations as to delivery, issuance of the bill of lading, and destruction of the goods while in the alleged possession of the carrier; and they were properly overruled by the court. The allegations are sufficiently definite to enable the defendants to prepare their defense, and the grounds of the special demurrers are without merit. They are controlled by what has already been said in this opinion, and further discussion is unnecessary. Paragraph 13 contained allegations as to the act of the carrier in removing the car-load with its engine after the goods had been destroyed by fire and then replacing it at its original position. These allegations were immaterial to the plaintiff's cause of action, and should have been stricken. It is possible that on the trial of the case the proof of facts alleged in paragraph 13 might confuse the jury and cause them to find that delivery was made by reason of the fact that the car-load was subsequently attached to the carrier's engine, although at that time the goods had already been destroyed by fire; whereas the gist of the action is that delivery had been made, before the fire, where there was a regularly ap-

pointed agent, and that bill of lading had been issued. The judgment overruling the demurrers is affirmed with direction that before the remittitur of this court is made the judgment of the trial court the plaintiff amend its petition by striking therefrom paragraph 13; otherwise, the judgment shall stand reversed because of its failure to sustain the special demurrer to paragraph 13.

*Judgment affirmed, with direction. Stephens, P. J., and Felton, J., concur.*